With that, I will call the fourth and last case of the day. It's Diane Fisher v. PNC Bank and PNC Investments, LLC. Good morning. It's telling me that I can't start my video because the host stopped it. I can't see you, Mr. Sanchez. Yeah, I'm trying to, but it says you can't start your video. We're just messing with you. We just want to see how good you are on your feet. I was ready to dial the number that I needed to dial in case of... Right, right, for emergency. Like 911 or something. Good morning, Your Honors. Good morning, Your Honors. May I please the court? My name is Moises Saltiel. I am the attorney for the appellant, Diane Fisher, in this matter. And Your Honors, I believe that the issue that we have to decide here today is somewhat of a narrow and straightforward one. And it's whether this case falls within the purview of the probate exemption and does divest the district court of subject matter jurisdiction when the claims presented by the appellant are direct claims against third parties, the appellees, for tortuous conduct that in mishandling and committing appellant's own property long before and unrelated to the probate administration of the appellant's deceased mother. Appellant respectfully argues that it doesn't and ultimately asked this court to reverse the district court's ruling and remand it for further proceedings. I believe, Your Honors, that the Supreme Court case of Marshall v. Marshall is illustrative and instructive to this case, both in the application of the facts in that case, the application of the law. The late Justice Ginsburg framed the issue, and I'm quoting directly from the case, as to whether the probate exception is limited when the district court would be required to either probate or annul a will, administer an estate, or dispose of property that is in the custody of the probate court. In that case, squarely fell within that last third element, which I believe is the one here at issue. Justice Ginsburg further defined it as to whether the relief sought disturbs or affects the possession of the property in the custody of the state court. In other words, when potentially we have two courts exercising jurisdiction over the same In that case, the decision in the case hinged on whether the property was within or without or outside of the custody of the probate case. In that case, the court held that it didn't because the claims being brought forward by the appellant in that case was a dispute involving property that was transferred before the decedent's death and where tortious acts of the appellee unrelated to the administration of the estate. Ultimately, that property was never part of the custody or the administration of the estate and therefore caused the claims to fall outside of the probate exception. But let's suppose for the purposes of this question that I agree with you that this does not fall within the probate exception. Under Florida law, does your client have any interest in the funds since she was not an account holder? How do you handle that? The party and interest issue, really? Yes, Your Honor, because these were funds of my client and were deposited into account jointly with her mother. That's not a dispute. However, it was the appellees that unilaterally took my client off of the account and that's where they divest my client from her property. That's when she suffers the loss, essentially. Obviously, there's all the other issues that took place, again, before the probate administration with Appellant's brother that left us siphoning out the funds out of the account. But just because the funds were in one same account or even in the benefit of the decedent, if we want to call it that, does not divest my client of ownership of those funds. Let me just ask you one clarifying question, too, because I had a question about that. So, I mean, am I understanding your claim correctly that basically your client, I mean, your client's money was just sort of stolen by the bank, some combination of the bank and the brother, that they kind of just took the money that belonged to your client? Is that fair? So, my client's claim is, before we even get there, is that the bank unilaterally took my client out of the joint account when they transferred the account. It was an investment account held at the Royal Bank of Canada. When they transferred the account over to PNC, that's the first issue. And then after that, yes, my client's brother orchestrated where he siphoned out certain funds of the account. It seems that he did also orchestrate that with certain tellers of PNC, where he was using his mother as an instrumentality to be able to siphon out the accounts. So, if you won the lawsuit, and we're at the very beginning of the lawsuit, this is the complaint, but if you won the lawsuit, you would be getting damages from the bank or the brother or both, something like that, that would be paid to your client. Yeah. In this case, directly from the brother. And that's precisely the issue that we have in Marshall, where the claims being sought are, it's an interim judgment directly from the bank, from property or funds that were lost long before there was any administration of the case. And that would belong to my client independently from- You're saying you would get funds from the brother or from the bank? Well, the instant lawsuit in the district court is filed against the bank only. Yeah, that's what I thought. And the brother's not a party to this lawsuit, right? It is not a party to the lawsuit. Okay, right. What you're asking for is a check from the bank to your client at the end of the case that says, I mean, the idea is this is the money that we lost or we stole or whatever, and we're going to have to pay you back. And here it is. Correct. That's precisely it. I don't have more to elaborate on that. And is it limited to the $150,000 or is it all of the money that you say the bank wrongfully gave to the brother? No, I think my client's claim would be the $150,000 that initially were transferred. Yes, there was appreciation of that money through the years that was invested in the 80s, I believe late 80s. But it is specifically over what my client claims was her property that shouldn't even be considered part of the program administration, even if it would have been transferred to the estate. Is it correct that she has received $150,000 from the estate? Not to my knowledge, Your Honor. I know that there's been distribution of estate property and received some, and even the estate has resolved its own claims against PNC, but my client has not been a beneficiary of those funds. And that's not a part of the record that I'm familiar with in this case, is it? I mean, what's going on in the estate? No, Your Honor, because respectfully, one of the main issues for argument is that this case maybe got dismissed prematurely. And there were findings that the district court made that are not supported by the claims asserted against the appellant and certainly wouldn't be beyond what is being pled and with no record evidence to support that. And also, I mean, you know more about Ms. Fisher's complaint than I do, but I mean, she's also seeking compensation from the bank about for all the time it's taken her to kind of sort out what happened and, you know, deal with it, try to get things righted, right? Yeah, well, Your Honor, there is a civil theft component to the claims that she's bringing. And therefore, after complying with the civil theft statute requirements, she is entitled now to seek certain costs and damages, even attorney's fees that have resulted in her loss. Yes. Your Honor, I believe that the case of Marshall is instructive because like in Marshall, we have an appellant here that filed a lawsuit for direct claims against, in this case, was a third party. So I think it's even a degree removed from the case in Marshall, where in that case, the plaintiff was filing a lawsuit against a beneficiary of the estate who happened to be the administrator, but unrelated to the administration of the estate. But the bank long before this, these funds ended up in the, well, not these funds, because this one's never made it there. But before there was a probate of the administration, or a probate administration of the decedent's estate. And I believe that the case of Stewart v. Hatcher, which this court ruled on in 2018, is further illustrative. District Court molds the facts in our case to make it fit in the same conclusion. But Stewart is not an opposite or is not unfavorable to my client. In fact, I'm going to read a direct quote that highlights the distinction and why this case falls more into the Marshall Court. And it says, because Marshall involved a dispute about property transfer before the decedent's death, and thus property that was never part of the decedent's estate, the Supreme Court concluded that plaintiff's claim fell outside the scope of the probate exception. Unlike the dispute in Marshall, the dispute in this case centers around the assets of the estate and thus implicated the probate exception. The facts in Stewart are completely different, because there was a plaintiff suing the administrator of the estate directly for mismanaging the assets in the estate and losing value of the estate assets that ultimately would be distributed not just to the plaintiff in that case, but to all the beneficiaries. So in that case, the plaintiff was asking the District Court to step into the shoes of the probate court, which is not what we have in Marshall. It's not what we have here in this case. The other important factor is that I believe police have taken a completely contradicting position in this case from what they are doing with the estate in the probate proceeding. And it is that while they are arguing here after the court raised the probate exception that a decision from the District Court would interfere with the probate proceeding, they've taken the position, and they cited it in their briefs, of settling directly with the estate of the estate's own claims, where the estate and them have taken the position that the claims that appellant has with the District Court are completely unrelated and do not affect the probate proceedings and therefore have continued in the matter. And the probate court has also accepted that interpretation from the estate in that case. I see that my time is up. I reserve the rest of my time for rebuttal. Thank you. All right, we'll give you that time. May it please the court, my name is Michael Zullo and I represent the Appalese PNC Bank and PNC Investments. This case is really boiled down to its essence. A beneficiary is not happy with the manner in which the estate decided to handle the claims against the Appalese and so now is attempting to usurp those claims for herself and bring those claims directly. And that actually is not argument to flourish. That's in the record, that's an affidavit that the appellant submitted, which is document 13-1, attached to that document is a settlement agreement that the appellant entered into with the estate, which explicitly acknowledges that there's disagreements between parties pertaining to the appointment of the personal representative and certain litigation that the estate has against PNC Bank. Let's assume that that's all true. Is that really a question of whether this entire case is not properly in the district court because of the probate exception or is that a question of whether Ms. Fisher is the appropriate party or whether her claims are somehow barred for a different reason? So thank you, Your Honor, and I think an important distinction that actually a question you asked during appellant's argument is the district court rested its dismissal on two separate grounds. One, as you just noted, is that Ms. Fisher is not the personal representative of the estate and therefore cannot bring claims on behalf of the estate. Appellant never addressed that argument in its briefing and we submit that they waived that argument and that alone would be grounds to affirm a lower court decision. With respect to the second portion, yes, the probate exception comes into play by virtue of the manner in which the appellant is attempting to bring this claim. I think with respect to that, I think we need to back up and make a couple factual clarifications because what appellant has done has lumped in PNC Bank and PNC Investments as one entity both controlling the same accounts. The record and the allegations in the complaint are that they're two separate entities, that appellant's mother had what I'll call retail deposit accounts at PNC Bank that existed long before the investment relationship. Appellant never makes a claim that she was an owner of those retail deposit accounts and she never makes a claim that her money was deposited into any of those retail deposit accounts and she never makes a claim that any of the money stolen out of the retail deposit accounts belong to her. And that's important because those claims harmed to the retail deposit account are claims that were suffered exclusively during appellant's mother's lifetime by appellant's mother. And when appellant's mother did pass, those claims passed to the estate and appellant has no basis to assert claims on behalf of herself with respect to the retail deposit account. She's not an account owner. I mean, that seems to me an advocate's reading of the complaint in this case. I mean, you know, because we are on our, I mean, Judge Marino said there's no subject matter jurisdiction, but the complaint that Ms. Fisher filed affirmatively alleges that when the Ms. Charlotte's accounts were transferred to PNC that Ms. Charlotte notified two of the named employees at PNC that the account included over $150,000 that belonged to Ms. Fisher and that she, you know, that they affirmatively, I mean, you know, the allegation is that one of those employees was later fired by PNC for falsifying customer account records and that the PNC employees unilaterally removed Ms. Fisher as an account holder. So it seems to me you're taking an advocate's view of what was alleged here. No? Your Honor, so respectfully, I disagree with that characterization. If you look at the complaint, paragraph nine is where the first allegation appears concerning the retail deposit accounts. And if you look at the paragraphs that precede that, beginning in paragraph 13, those are all discussion about the transfer of this investment account, Royal Bank of Canada investment account in which appellant alleged she was an account owner to PNC investments, not PNC Bank. If you say for one paragraph about theft from the investment account, the allegations that the teller at a bank assisted that this was done at a branch level, those are all with respect to retail deposit accounts that appellant never actually alleged she had an ownership interest. And I think to get to the meat here. I mean, what she says is the reason why she wasn't named in the account that transferred the funds from the Royal Bank of Canada was because, you know, your employees didn't do what they were supposed to do or what they were instructed to do. Correct, Your Honor. And that's with respect to the investment account only. That's not. But to that point, Your Honor, and I think to get to the probate exception, the appellant's argument is focusing on the relief it seeks. But that is actually missing the point here. It's reversing what we should be looking at. What Marshall and his progeny have made clear is that a federal court cannot exercise, excuse me, jurisdiction over an asset that is currently before a probate court. The assets in this case, it's undisputed that when Ms. Charlotte passed, the investment account and the bank accounts became assets of the estate. So the asset is actually before the probate court. Right. But is she seeking any money out of those accounts? What she's seeking is to assert a claim by virtue of an alleged ownership interest. No, but listen to my question. Is she seeking any money out of those accounts? To prove her case, she would absolutely require the federal court to do a valuation of those accounts, which is- She wants you to pay. She wants your client to pay those funds. She's not asking the estate to pay the funds. She does, but the only way a federal court could reach a resolution of these claims is to exercise jurisdiction over three assets that are in possession of the state court. The accounts themselves, by saying that she can bring claims on behalf of the accounts, the claims themselves, which are actually assets of the estate. And the reason we know they're assets of the estate is because if we look at the chronology here, Ms. Charlotte actually did file a lawsuit before she passed. That lawsuit was filed in February of 2018. That lawsuit was based on the very same allegation that Appellant's case is based on. When Ms. Charlotte passed, the claims became assets of the estate. The estate in the probate court petitioned and received approval for the appointment of an attorney ad litem to prosecute those claims. So what Appellant's doing is saying, yes, the claims, which are assets of the estate, I actually have an ownership over them and I can prosecute them. And I'm asking the federal court to exercise jurisdiction over an asset that is indisputably before the probate court. And then if you take it to the next step, Appellant's allegations here are all about harm to accounts. There's not a single allegation in this complaint that her specific money was stolen. In fact, the only allegation that concerns the investment account appears in paragraph 40 of the complaint. And it says that securities held on behalf of Appellant's mother were sold. It doesn't say her investments were sold. It doesn't say that her money that she entrusted. But they were held, according to the allegations, they were in the name of the mother because PNC wrongfully removed Ms. Fisher's name from the account, right? Well, that's where the problem with the probate exception comes in. Because this is an investment account. And as Appellant argued, an investment account is not a dollars in, dollars out analysis. So the account had funds that had been entrusted in the 80s that presumably over some period of time changed their value. The only way that a federal court could determine if Appellant actually suffered harm would be to conduct an evaluation of the asset, the account, the investment account to make a determination if Appellant's $150,000 entrustment had appreciated to a certain amount. If the disposition provided for by the will of Ms. Charlotte made Appellant whole with respect to that entrustment, and we have in the record a document, a settlement agreement showing that a specific request was made to Appellant for the $200,000, which under law we can assume is a repayment of that entrustment. So then the federal court would have to look past that and then do a determination to say, well, was Appellant's interest in this asset that is before the probate court actually harmed by the alleged tortious conduct? And there's no way to do that without conducting a premature evaluation of the estate. That's exactly what the panel and Stewart said was prohibited by the probate exception. And with respect to this argument that Appellant is making, that she has individual claims here, the most analogous case is actually a Third Circuit case that is cited by Appellant. That case is the Three Keys case. In that case, when the decedent passed, he owned 100% stock in a company. After he passed, a third party claimed ownership of 24% of that stock and attempted to bring its own claims in federal court by virtue of that ownership interest. The federal court rejected that under the probate exception and said that asset, the stock, is before the probate court. Any dispute as to ownership of that asset should be resolved by the probate. Wasn't that party asking for recovery of a portion of that asset from out of that account or out of that asset? It was, Your Honor, but the focus on the federal court was that, does this party even have, as they call it, standing in this claim by virtue of this alleged ownership interest? Because remember, Appellant in this case doesn't have ownership interest in any of these accounts. She's seeking to take ownership of these accounts by virtue of an allegation that she was supposed to be an owner. Appellant's proper remedy would have been to claim that before the probate court, to declare herself the owner of these accounts, and then we wouldn't have the probate exception. It seems that she's not asking currently for ownership or any of the funds out of the accounts. She's asking for PNC to be held accountable for alleged fraud and other crimes by its employees, or maybe not crimes, other violations by its employees. That seems different to me. Well, I think that what Stewart and Turton have made clear is you have to look past the nature of the allegations at the result of what the relief that the Appellant is seeking would ultimately have on the probate court. And there's two ways that Appellant's requested relief would ultimately impact the probate court and the assets before the probate court, which are the accounts. The first is if Appellant is deemed a joint owner of these accounts, then those accounts, as a matter of law, would never have actually gone into the probate court. So the federal court would be exercising jurisdiction over assets that are before the probate court by saying you're a joint owner by operation of law upon death of the other joint owner, the estate actually, the funds in those accounts actually became your funds and never should have been part of the estate to begin with. The second way that this relief impacts the estate is because either way, if Appellant brings this case that concerns claims that the estate has already asserted and declined not to pursue, but that's an after the fact analysis, we have to look at when the complaint was filed. Can I ask you a specific question? Where in the complaint does Ms. Fisher request the court to find that she is currently the joint owner of that account? By virtue of her allegation that she is supposed to be an owner of the account, and therefore harm suffered in the account is harm that she suffered individually. Without that allegation, she can't allege an individualized harm. The harm is absolutely suffered by accounts owned by the estate, not by her. So let's just say hypothetically one of the PNC employees was in it all the way with someone trying to defraud Ms. Charlotte and Ms. Fisher. So there's no money left. So there's no issue money being in an estate somewhere. You're saying that Ms. Fisher has no cause of action against PNC because there's no money left? I mean, is that what happens under that circumstance? I understand the question correctly. I just that if all of the money had been drained. Right. I mean, you're saying what she's really after is money that's in the estate, even though when I read her complaint, she's alleging fraud on the part of your client. So what if there's no money left? You say she still has no cause of action against PNC? I say that it might be a different cause of action. She hasn't alleged claims of individualized harm. She would have to first establish. What would the complaint need to say? Well, for example, she could bring a declaratory judgment action, alleging that claiming that she is actually an owner of this account. And the reason that's important is because once this estate passed to the probate court, there are other beneficiaries. And presumably they stand to benefit from any recovery of claims against PNC. But you are back to that other money existing, which was a part of my hypothetical. So if there would be no money in the account, then. I mean, she knows the money is all gone. So she's coming to PNC to, you know, get damages for her loss based on what she said was fraud by PNC employees. Right. And I would say that under the law, and this is getting beyond the scope of the probate exception, but she wouldn't have a claim against PNC. That the law is well settled that as a non-account owner, she wouldn't have a direct claim. She wouldn't have a fraud claim because the basis of fraud would be that she justifiably relied on some misrepresentation of PNC. And the complaint, if you read it, is actually filled with allegation that there was communication with Ms. Fisher about things that were going on in the account. And she chose to do nothing about it until much, much later. So is your argument, if let's say Judge Martin and I have a joint account and a different bank simply takes me off of the account, is your argument that I have no cause of action against that bank because I'm not on the account? That you would have a different cause of action than what the appellant has asserted in this case. The appellant has not asserted a cause of action that relates to that specific harm. If you look at the allegate, the counts in this case are civil theft that relate to actions by the brother five years after that transfer occurred. There are counts of negligence for failing to prevent the brother from taking funds out of the account five years after the transfer occurred. In the scenario you described, your cause of action would be for declaratory relief that you are actually supposed to be an account owner of the account that was transferred and that you were denied for standing as an account owner by virtue of the malfeasance of the transferring bank. But that's not what the claims appellant brings concern here. They all concern actions by her brother five years after the transfer happened, which was 2011, and all of the theft alleged occurred 2014, 2015, and up till the time of the appointment of a guardianship in 2018. I see if my time is up, so if there's no further questions, I'll rest on the briefs. All right, thank you. Your Honor, I think that there's one thing that my colleague and I can agree on respectfully, and it is that we would have loved this case to actually develop on the merits. This case simply got dismissed because the court got alleged that the probate exception divested it from jurisdiction. And the real question before us is, without getting into the merits of the cases, does the district court judgment, would the district court judgment interfere with the probate proceeding? And it doesn't. The property that we're seeking relief here from never made it to the estate. It was lost long before the estate, and that's precisely the issue that we have in Marshall. The claims that my counterpart is alleging as to whether my client has standing to bring this lawsuit, whether she was entitled to bring certain causes of action, those were all addressed by the police in their motion to dismiss. That's Docket Entry 8 in the lower court record. And respectfully, those were denied upon report and recommendation of the general magistrate, Docket Entry 24. That ruling was adopted by the district court. It was the general magistrate, not a police, that raised the probate exception that say, we may want to look into whether the probate exception allows for jurisdiction or not. And then upon orders to show cause, that's when we briefed the court, decided that it was divested of jurisdiction. But those same arguments were already raised at a preliminary stage. They were denied by the court. And then the case never proceeded on the merits. I believe those are ones that need to be further developed. The appellee's claims, respectfully, could not, appellee could not be unhappy with the resolution of the estate's claim against the appellee's simply there was no resolution by the time that my client had filed the lawsuit. My client at that time had learned what had transpired, had learned that the account was unilaterally transferred by PNC. And she brought her own. The amounts of funds that were siphoned from the account, not only are the amounts that my client's seeking, the estate had its own claims for additional funds that the estate lost. And the estate has now resolved that with PNC, not through the federal court system, because unfortunately an arbitration clause precluded them to go through the district court. But that did not resolve my client's claim and did not affect the funds that my client is claiming that never made it to the probate proceedings. The other important point here is that the, just as Ginsburg stated in Marshall, and the Stewart decision also points to, is that the probate exception should be narrowly applied. And when we have an instance, which we do here, where possibly the claims could fall within or outside of the probate exception, the court must continue to exercise jurisdiction and earn the side of not divesting itself of jurisdiction, of continuing to exercise jurisdiction. And with the allegations that we have with the complaint, which your honors has very well touched on it, I believe that the facts presented and the claims presented, seen in the light most favorable to the appellant, are, should have granted, or should have at least maintained jurisdiction to move forward on the merits on the case. With that, unless your honors have additional questions, I believe I rest on the briefs and ask the score respectfully to reverse the ruling and remand it for further proceedings. All right. Thank you so much. We have your case. Thank you for the argument. And that is our last case of the day. I'm going to say to my two colleagues, you want to say quarter till 12 to regather. And with that, I'll thank counsel and say that we are in recess. Until nine o'clock tomorrow morning. Thank you. Thank you.